## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| BILLY WHITE, individually and on behalf of all others similarly situated, | § § § | |
| *Plaintiff,* | § § | |
| VS. | § § | CIVIL ACTION NO. 4:21-cv-3985 |
| WOOD GROUP MUSTANG, INC., AND RHI TALENT USA INC. f/k/a ALTABLUE, INC. | § § | |
| *Defendants.* | § § | |

### ORDER

Pending before the Court is Plaintiff Billy White's ("White") Opposed Motion for Notice

Under *Swales*. (Doc. No. 36). Defendants Wood Group USA, Inc. ("Wood Group") and RHI Talent

USA, Inc. ("RHI")[1] (collectively, "Defendants") responded in opposition. (Doc. No. 39). White

replied. (Doc. No. 42). Having considered the motion and the relevant pleadings, the Court finds

that Plaintiff's Motion should be **GRANTED** with modifications to the putative collective

members entitled to notice. (Doc. No. 36).

### BACKGROUND

White brought this action under the Fair Labor Standards Act, 29 U.S.C. §§ 201–219, and

the Portal-to-Portal Act, 29 U.S.C. §§ 251–262, (collectively, "FLSA") seeking damages for

Defendants' alleged failure to pay White sufficient overtime compensation while working for

Defendants. (Doc. No. 1). White filed the lawsuit individually and as a FLSA collective action "on

behalf of all similarly situated current and former employees of Defendants who, like Plaintiff,

were not paid time and one-half their respective regular rates of pay for all hours worked over 40

---

[1] Formerly "Altablue" and referred to as such in some of the documents produced by the parties. The Court will refer to Altablue/RHI Talent USA, Inc. as "RHI" for the purposes of this order.

in each seven-day workweek in the time period of three years preceding the date this lawsuit was filed and forward." (*Id.* at 1).

While some of the facts are disputed (and will be discussed below), for the purposes of this motion, the general allegations are as follows: Wood Group provides engineering and project management services and utilizes RHI to provide temporary workers. (Doc. No. 39 at 6–7). White was employed as a civil inspector on a Wood Group project in Wink, Texas and Jal (Cowboy), New Mexico. As a cement inspector/civil inspector, he "ensured proper concrete placements, correct structural and miscellaneous steel installations, and coordinated proper gradation, road, and sidewalk placement, drainage, and re-vegetation of the facility site. [He] also ensured that all permits were acquired by clients and contractors and that any concrete testing was carried out per project." (Doc. No. 36-1 at 2).

White alleges that when he worked for Wood Group (and later RHI) in Wink, Texas and Jal (Cowboy), New Mexico between October 15, 2018, and April 26, 2019, he was paid an hourly rate of approximately $44.23 per hour and a "non bona fide per diem pay" in the amount of approximately $206 per day. (*Id.* at 2). White alleges that he and others similarly situated were not paid the overtime they were due because Defendants failed to include the per diem payments in the regular rate of pay when calculating the one and one-half overtime pay. (*Id.*). White, therefore, seeks to hold both RHI and Wood Group jointly and severally liable under the theory of joint employment. (Doc. No. 19 at 3). The parties have conducted limited discovery that they agreed was appropriate under the relevant standards set in *Swales v. KLLM Transport Services, L.L.C.*, 985 F.3d 430 (5th Cir. 2021). White claims he has "adduced sufficient evidence to demonstrate the existence of a class of similarly situated current and former employees" such that this Court should permit Plaintiff to send notice of this action to a collective of current and former Wood Group/RHI

2

hourly employees whose per diem pay was not included in the regular rate of pay when calculating overtime. (Doc. No. 36 at 8). Defendants disagree.

## LEGAL STANDARD

FLSA protects employees by establishing a minimum hourly wage, maximum work hours, and overtime compensation for work beyond 40 hours per week. 29 U.S.C. §§ 206(a)(1), 207(a). An FLSA case may be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The 1947 Portal-to-Portal Act amended FLSA's collective-action procedure, requiring similarly situated employees to opt-in via written consent. *Swales*, 985 F.3d at 435. In 1989, the Supreme Court decided *Hoffmann-La Roche Inc. v. Sperling*, holding that a district court has discretion to authorize and facilitate notice of a pending collective action to potential plaintiffs. 493 U.S. 165, 169 (1989).

The district court's notice-giving role is "pivotal to advancing the goals and evading the dangers of collective actions." *Id.* The Fifth Circuit has instructed that "when managing a putative FLSA collective action, 'a district court should identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of employees is similarly situated. And then it should authorize preliminary discovery accordingly.'" *Loy v. Rehab Synergies, L.L.C.,* 71 F.4th 329, 336 (5th Cir. 2023) (quoting *Swales*, 985 F.3d at 441). "To decide whether a group of employees is similarly situated, the district court must consider whether merits questions can be answered collectively." *Id.* (internal quotation marks omitted). "If answering the merits questions 'requires a highly individualized inquiry into each potential opt-in's circumstances,' then the employees are likely not similarly situated." *Id.* (quoting *Swales*, 985 F.3d at 442). Plaintiff bears the burden to establish that they are similarly situated. *Id.*

Prior to the Fifth Circuit's opinion in *Swales*, district courts often followed the two-step *Lusardi* approach to determine whether employees were "similarly situated" prior to giving notice to potential collective members. *Loy*, 71 F.4th at 336. In step one, a district court conditionally certified a collective based on pleadings and affidavits, "requir[ing] little more than 'substantial allegations.'" *Swales*, 985 F.3d at 436–37. In step two, the court would entertain a motion to decertify at the conclusion of discovery. *Id.* at 437. In *Swales*, however, the Fifth Circuit rejected *Lusardi*'s "lenient" approach, instead instructing district courts to "rigorously scrutinize the realm of 'similarly situated' workers" from the "outset of the case, not after a lenient, step-one 'conditional certification.'" *Id.* at 434. In scrutinizing, district courts must consider "all available evidence." *Id.* at 443.

Although the *Swales* court rejected *Lusardi*'s two-step approach, it did not dispose of it wholesale. The Fifth Circuit has clarified that "courts may still find it useful to consider the *Lusardi* factors to help inform or guide the similarly situated analysis given the similarities between *Swales* and *Lusardi*'s second step." *Loy*, 71 F.4th at 337. Under the *Lusardi* factors, courts consider "the disparate factual and employment settings of the individual plaintiffs; the various defenses available to the defendant which appear to be individual to each plaintiff; and fairness and procedural considerations." *Id.* "That said, use of these factors is not mandatory, as there is no one-size-fits-all analysis or mechanical test to apply." *Id.* The bottom line is that "the district court has broad, litigation-management discretion cabined by the FLSA's similarly situated requirement." *Id.* (citing *Swales*, 985 F.3d at 443) (cleaned up).

"When and whether notice is issued depends on if the available evidence demonstrates that the similarly situated threshold has been met." *Hebert v. Technipfmc USA, Inc.*, No. 4:20-CV-2059, 2021 WL 1137256, at *2 (S.D. Tex. Feb. 5, 2021). "If the pleadings and preliminary discovery

4

show sufficient similarity between the plaintiff and potential opt-in plaintiffs, the court may issue notice before additional discovery is completed." *Id.* "However, if the plaintiff and potential opt-in plaintiffs have demonstrably different work experiences, courts have the discretion to choose between multiple next steps." *Id.* (internal quotation marks omitted). "After identifying the material facts and legal considerations at issue, the Court may decide (i) collective action is not appropriate; (ii) additional discovery is needed to make a determination; or (iii) a certain category of employees is similarly situated and should be given notice." *Young v. Energy Drilling Co.*, 534 F. Supp. 3d 720, 724 (S.D. Tex. 2021) (citing *Swales*, 985 F.3d at 443).

## ANALYSIS

Plaintiff seeks leave to send notice of this action to a collective of Wood Group/RHI's hourly employees who received additional per diem payments and whose regular rate of pay (for the purpose of calculating overtime) did not include the per diem payments. Once notice is sent, such potential plaintiffs would have the opportunity to "opt in" to this action via written consent.

Plaintiff argues that he has met his burden under *Swales* to show that this group of employees is "similarly situated" because: 1) Defendants' allegedly violative overtime pay policy applied equally to 19 categories of non-exempt employees and 2) Defendants' defenses can be asserted and determined on a collective basis. In response, Defendants argue that determining whether an employee's expense reimbursements (per diem payments) were reasonable or "disproportionately large" is an analysis that must be done on a case-by-case basis. Additionally, Defendants argue that determining whether RHI and Wood Group were a particular plaintiff's "joint employer" is a heavily fact-dependent inquiry that requires adjudication on an individual, rather than collective, basis. Defendants also contend that "Plaintiff fails to provide any evidence

5

that demonstrates he is similarly situated to individuals who worked in different geographic locations." (Doc. No. 39 at 6).

The primary issue for this Court to decide is whether Plaintiff has met his burden to show that the proposed potential collective members are similarly situated for the purposes of a FLSA collective action. The Court will first consider two threshold issues relevant to this case: namely, whether collective treatment of per diem claims under FLSA is appropriate after *Swales*, and whether the determination of "joint employer" status precludes a collective action here.

### I.      Per Diem Cases after *Swales*

The FLSA provides, in relevant part, that the regular rate of pay does not include "reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer." 29 U.S.C.A. § 207(e).

As a threshold issue, the parties appear to disagree about whether per diem cases in general can proceed to the notice stage of a collective action. In *Berry v. Excel Group*, the Fifth Circuit held that the FLSA "requires each employee's expenses to be examined on a case-by-case basis to see whether 'per diem' is appropriate and reasonable." 288 F.3d 252, 254 (5th Cir. 2002). Defendants essentially argue that this "case-by-case" analysis precludes collective action treatment of FLSA per diem claims post *Swales*, which no longer permits "lenient" conditional certification. (Doc. No. 39 at 13). Conversely, Plaintiff points to certain post-*Swales* cases, such as *Young*, 534 F. Supp. 3d 720, that allowed "regular rate miscalculation" cases to proceed to the notice stage, despite varying job positions, duties performed, or locations worked. (Doc. No. 36 at 11).

Both arguments somewhat miss the mark. While *Swales* disposed of the "lenient" *Lusardi* standard, *Swales*, 985 F.3d at 434, it did not categorically foreclose any subset of FLSA cases from

6

collective treatment as a matter of law. Instead, it simply instructed district courts to "rigorously scrutinize the realm of 'similarly situated' workers" from the "outset of the case." *Id.* To be sure, the Fifth Circuit in *Berry* held that FLSA "requires each employee's expenses to be examined on a case-by-case basis to see whether 'per diem' is appropriate and reasonable." 288 F.3d at 254. That instruction, however, did not automatically foreclose FLSA per diem cases from collective treatment. For example, if a group of employees with the same job titles and duties was provided room and board by the same company on the same jobsite, the employees' expenses likely will be so similar to each other as to justify a collective treatment. All *Swales* and *Berry* do is heighten Plaintiff's hurdle to collective action. They do not erect an insurmountable wall.

*Young* does not control the outcome either. In *Young*, the plaintiff alleged the defendant's non-discretionary bonuses to hourly employees were improperly excluded in calculating their regular rates of pay. *Young*, 534 F. Supp. 3d at 724. In response, the defendant argued that the potential collective members' job titles, work locations, and the specific types of bonus payments varied, making the proposed collective members dissimilarly situated. *Id.* at 723. The court concluded that "[w]hether employees are similarly situated for purposes of the claim in this case turns on whether [the bonuses] are 'non-discretionary' and required to be included in employees' regular rate of pay." *Id.* That, in turn, "does not depend on the employees' specific job duties or where the employee worked," but rather, whether they "were subjected to the same pay practice" as the plaintiff there. *Id.* That is, the unifying factor—the common pay policy—trumped the variations among the potential collective members.

In this case, on the other hand, the unifying factor among the proposed collective members—allegedly non-bona fide per diems—does not trump the differences among the proposed collective members; it depends on them. The per diems are necessarily dependent on the

expenses incurred or projected to be incurred by Defendants' employees, which in turn may depend on the various locations in which the employees worked. Indeed, the Fifth Circuit has noted that FLSA and its accompanying regulation regarding expense reimbursements "provide[] that courts must examine specific payments by an employer to an employee to cover specific expenses." *Berry*, 288 F.3d at 254 n.7.

Therefore, per diem cases are neither categorically barred from collective treatment like Defendants claim nor as conducive to collective treatment as non-discretionary bonus cases like Plaintiff claims. Thus, this Court will proceed to conduct the "rigorous[] scrutin[y]" of "all available evidence." *Swales*, 985 F.3d at 434, 443.

Here, Plaintiff has failed to meet his burden for his proposed collective. Plaintiff proposes sending notice to a nationwide collective. *See* (Doc. No. 36 at 12). In support of his position that employees of Defendants nationwide allegedly suffered the same grievance as he, Plaintiff offers a copy of Defendants' pay policy, showing the same per diem amount of $191 for each of the 19 categories of workers. (Doc. No. 36-1 at 33). Defendants, however, have offered evidence that shows that per diem amounts differ throughout the 117 cities in which they operate. (Doc. No. 39-1). Of course, this Court need only find that the proposed collective is "similarly situated," not "identically situated." *Klick v. Cenikor Found.*, 94 F.4th 362, 372 (5th Cir. 2024). Nevertheless, a per diem amount that is unreasonable in one location may be quite reasonable in another, and such a determination for each of the 117 cities would run counter to the judicial efficiency purpose of a FLSA collective action. *See Swales*, 985 F.3d at 435 (listing efficiency of "resolving common issues in a single action" as one of the dual goals of collective actions under FLSA). While Plaintiff could have offered evidence, for instance, that the formula that resulted in the per diem calculation was flawed, thereby simplifying the reasonableness determination, he has not done so here. Thus,

8

this Court finds that Plaintiff failed to show that the nationwide collective he seeks is warranted by "all available evidence."

## II.    "Joint Employer" Issue

Plaintiff's Motion suffers from a similar defect with respect to the joint employer issue. Defendants' argument is twofold: First, Plaintiff alleges joint employment (and thus, joint and several liability from Wood Group and RHI), while only *some* of his proposed collective would have been jointly employed; this creates two dissimilar subgroups. Second, even among those who are allegedly jointly employed, the Court must undertake an "economic realities test," a fact-intensive balancing test, that will necessitate an individualized assessment unsuitable for a collective treatment. In response, Plaintiff simply argues that Defendants both admit to employing Plaintiff (though at different times) on the Delaware Connector project.

Plaintiff mentions, but makes no effort to satisfy, the "four factor economic realities test from *Gray v. Powers*." (Doc. No. 42 at 11) (citing *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012)). To determine whether there is joint employment, the court considers whether the alleged employer: (1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records. *Gray*, 673 F.3d at 355. Notably, "mere conclusory allegations and inferences are not sufficient to prove the required linkage [of joint employer status]. This court must still apply the economic realities test to each individual or entity alleged to be an employer." *Id.* at 355 (cleaned up).

Even assuming that such totality-of-the-circumstances test can be applied on a collective basis, Plaintiff has not met the burden of establishing those factors as to both Wood Group and RHI. First, Plaintiff argues that those working for Wood Group directly and those working for

9

Wood Group through RHI were both paid the same per diem rates. (Doc. No. 36 at 11). While this presumably is an effort to satisfy prong three (that the alleged employer determined the rate and method of payment) through circumstantial evidence, it could also mean (1) Wood Group paid its workers the same, regardless of whether they were hired directly or through a third party; and (2) RHI simply followed its client's lead.

Second, Plaintiff submits his earning statements, which purport to show "[a]t different times during his employment, both entities paid Plaintiff for his work on their behalf." (Doc. No. 36 at 3). True, some earning statements, such as ones from January 2019, and on, are from Altablue (now, RHI), and others, such as ones from before December 2018, are from Wood Group. (Doc. No. 36-1 at 11–31). While these invoices could demonstrate both entities "determined the rate and method of payment," they match up perfectly with Defendants' story, too: that Plaintiff was employed by Wood Group "from approximately October 7, 2018, through December 21, 2018," (Doc. No. 25 at 2) and by RHI "for the period of approximately December 15, 2018, through March 26, 2019," (Doc. No. 26 at 2). Plaintiff makes no effort to negate this counternarrative, nor does he argue that the apparent six-day overlap is the basis of his joint-employer argument.

Third, Plaintiff points out that "Jennifer Jones, a compliance analyst for Defendant Wood Group, provided sworn statements about *both* RHI and Wood Group." (Doc. No. 42 at 11) (emphasis in original). The only statement by Jones that Plaintiff points to, however, is simply that "[w]hile working for WGUSA and RHI, White worked on the Delaware Connector project." (*Id.* at 12). Her knowledge of Plaintiff's placement cannot be the basis for a finding of joint employers. For these reasons as well, this Court finds that a nationwide collective as proposed cannot be justified due to this joint employment issue.[2]

---

[2] While not squarely before it, the Court assumes that, eventually, it will be faced with appropriate motions regarding the "joint employer" issue.

### III.    The Authorized Collective

Perhaps sensing that he may not prevail on the joint employer issue, Plaintiff offers an alternative. He writes, "[i]n the event the Court finds that the employment relationship does render any employees dissimilarly situated . . . the Court should certify subclasses defined as follows:

All current or former employees of Defendant Wood Group who are/were paid on an hourly basis while receiving so-called 'per diem' or 'expense reimbursement' payments and who are/were not paid time and one-half their respective regular rates of pay for all hours worked over 40 during each seven-day.

All current or former employees of Defendant RHI who are/were paid on an hourly basis while receiving so-called 'per diem' or 'expense reimbursement' payments and who are/were not paid time and one-half their respective regular rates of pay for all hours worked over 40 during each seven-day."

(Doc. No. 42 at 12–13).

While these proposed subclasses might eliminate the joint-employer problem, it does not address the fact-intensive inquiry this Court must undertake into reasonableness of per diems across the country. That, of course, does not mean no collective should be certified at all, since Defendants' main objection hinges on the existence of 117 different worksites throughout the country. Nothing in that argument suggests the impropriety of forming a collective of employees at just *one* of the sites. In fact, Plaintiff has provided sufficient evidence of a uniform per diem across the 19 categories of employees where he worked. (Doc. No. 36-1 at 33). This time, Defendants offer an alternative, writing:

In the event that the Court believes a collective that is reduced in scope is proper, Defendants assert that the collective should be limited to those current and former employees who were paid hourly with a per diem and who worked on the Delaware Connector project in Wink, Texas and/or Jal (Cowboy), New Mexico.

(Doc. No. 39 at 22 n.77).

This Court, after consideration of all available evidence, authorizes notice under *Swales* to two sub-collectives:

11

(1) All current or former employees of Wood Group on the Delaware Connector project in Wink, Texas and/or Jal (Cowboy), New Mexico, who worked from December 7, 2018, to present, are/were paid hourly, and are/were also paid "per diems" that were not included in the calculation of their one and one-half overtime pay.

(2) All current or former employees of RHI on the Delaware Connector project in Wink, Texas and/or Jal (Cowboy), New Mexico, who worked from December 7, 2018, to present, are/were paid hourly, and are/were also paid "per diems" that were not included in the calculation of their one and one-half overtime pay.

## IV.    Form of Notice

As to notice, Defendants state that they have "no objection" to providing notice by U.S. Mail with a reminder postcard. (Doc. No. 39 at 19). Plaintiff states that he will confer with Defendants regarding appropriate methods of disseminating notice to the putative collective action members. (Doc. No. 42 at 17). Court hereby **ORDERS** the parties to confer and to agree, if possible, as to the format and timing of the notice. They should inform the Court by a joint letter of their proposal by October 25, 2024.

## CONCLUSION

In conclusion, the Court finds that Plaintiff shall be authorized to send notice to the

following potential members of the collective action:

(1) All current or former employees of Wood Group on the Delaware Connector project in Wink, Texas and/or Jal (Cowboy), New Mexico, who worked from December 7, 2018, to present, are/were paid hourly, and are/were paid "per diems" that were not included in the calculation of their one and one-half overtime pay.

(2) All current or former employees of RHI on the Delaware Connector project in Wink, Texas and/or Jal (Cowboy), New Mexico, who worked from December 7, 2018, to present, are/were paid hourly, are/were paid "per diems" that were not included in the calculation of their one and one-half overtime pay.

The parties are to agree upon the procedures to be followed and to inform the Court as ordered

above.

Signed on this the __23rd__ day of September 2024.

Andrew S. Hanen
United States District Judge